Shauck, J.
The constitutional validity of this act is the inevitable question. The pertinent limitation upon the power of the general assembly is found in the thirteenth article of the constitution:
" Sec. 1. The general assembly shall pass no special act conferring corporate powers.
*3 “ Sec. 6. The general assembly shall provide for the organization of cities and incorporated villages by general laws; and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power.”
Corporate powers are clearly conferred by this act, since by its explicit provisions it authorizes the municipalities described to issue bonds and to provide for their payment by levying taxes in addition to all other taxes that are by law authorized to be levied. This is the extreme of municipal power. Therefore, the act cannot be valid if, within the meaning of these constitutional provisions, it is special.
The purpose and meaning of these provisions of the constitution were once well understood. They are admirably expressed in the language of Ranney, J., in Atkinson et al. v. The Railroad Co., 15 Ohio St. 21: “ Constitutional provisions would be of little value if they could be evaded by a mere change of forms. These provisions of the constitution are too explicit to admit of the least doubt that they were intended to disable the general assembly from either creating corporations, or conferring upon them corporate powers, by special acts of legislation. It was intended to correct an existing evil, and to inaugurate the policy of placing all corporations of the same kind upon a perfect equality as to all future grants of power; of making such laws applicable to all parts of the state, thereby securing the vigilance and attention of its whole representation ; and finally, of making all judicial construction of their powers, or the restrictions imposed upon them, equally applicable to all corporations of the same class. We must give such a construction to the constitution as will preserve its great leading objects intact.” It does not detract from the force of these observations that they were made of the first and second sections of the article; for the terms of these several provisions and their relation to each other leave no room to doubt that, by the first and sixth sections, it was intended to inaugurate throughout the state with *4 respect to municipal corporations the same general policy which by the first and second sections was inaugurated as to all other corporations. This was distinctly decided in The State ex rel. The Attorney-General v. The City of Cincinnati, 20 Ohio St. 18, where Brinkerhoff, J., thus clearly stated the meaning of these provisions : “ In respect to corporations proper, whether private or municipal, the provisions of section one, article thirteen, are all comprehensive. ‘ The general assembly shall pass no special act conferring corporate powers. The provisions of tile constitution are as imperative, as comprehensive and emphatic, as if the people, speaking through their constitution, had said : “ This bane and curse of our legislation as it existed under the latitudinarian provisions of the constitution of 1802, is, in future, utterly and absolutely prohibited. Henceforth the laws conferring coporate powers shall be general; affecting, or liable to affect, the interests of the constituency of every individual member of the general assembly; and so, by powerful motives, calling his attention to the effect of proposed enactment's upon his own immediate constituency, as well as upon the people of other localities. This is the policy and intent of the provisions of the constitution above quoted ; and they are as clearly apparent as if they had been expressed in so many words.”
Brief consideration of the evils which these provisions were intended to correct, of the proceedings of the convention which framed the constitution, and of the contemporaneous public discussion of its provisions will fully justify the. observations of these eminent judges. Knowledge of the laws prevailing in one municipality was in no sense useful in another. The courts found it as difficult to settle the meaning of various acts, and to give symmetry to the body of corporate law, as though they had been charged with the duty of adjudicating the questions arising in a multitude of commonwealths. The time and attention of the general assembly was diverted from its most important and appropriate duty of legislating for the *5 general good, and to the passage of special acts, to such an extent that one general assembly had passed six hundred acts not of a general nature. And by the active support of a small portion of the representatives, who yielded to the importunities of persons having interests adverse to the public, or to the hastily formed opinions of excited majorities in the places affected, and by the indifference of the large body of the representatives to acts not affecting their constituencies, special laws had been passed under which many municipalities had been burdened with grievous and useless debts.
The eradication of these evils was regarded as of so great importance that nothing which concerned it was left to inference or implication. From the provisions of the second and sixth sections, which authorize the creation of corporations and the conferring of corporate power by general laws, it would have been easy to infer that such powers could not be conferred by special acts; but to provide against the possible failure to make such inference, the first section was adopted. And it was with evident purpose and great deliberation that this section was adopted in a form which admits of no exception. Propositions to so amend it as to permit the conferring of corporate power by special acts to meet emergencies; and to provide for such cases as, in the opinion of the general' assembly, could' not be provided for by general laws, were, after full discussion, rejected. They were rejected because it was anticipated that if power were given to provide by special acts for cases which might be deemed exceptional, the power would be so perverted as to continue the evils upon whose eradication the people had resolved. It was feared that if authority to confer corporate power by special act were given; it would be vain to put the general assembly upon its conscience as to the occasions for its exercise.
For the accomplishment of these ends these constitutional provisions are most apt and explicit. But after the lapse of forty years, it is common knowledge that the state is afflicted with a renewed growth of the evils that were supposed to be *6 extirpated. The dockets of the courts are burdened with cases involving the validity or meaning of special acts conferring corporate powers. A decision as to one municipality does not construe the acts made applicable to others. The body of our'corporate law is without form, and much of it is void. Much time is devoted by the general assembly to the adoption of measures which should be adopted, if at all, by the people and councils of cities and villages under general laws. So much has this evil grown that we find the act under consideration in a separate volume containing the acts not of a general nature passed by the general assembly at its “ adjourned session.” Many municipalities are excessively burdened with debts contracted under the ill favor of special acts to authorize local enterprises, which, in the retrospect, are seen to have been unwise; and which never challenged nor received the approval of the general representation. If the growing conviction that these are ills which need not be endured, should prompt another attempt to eradicate them by amending the constitution, it would encounter serious embarrassment. For it would be very difficult, if not quite impossible, to formulate for the prevention of these evils constitutional provisions more clear or explicit than those we now have. Indeed, so universal has been the belief that the thirteenth article forbids special acts for these purposes, that its abrogation or change in any form would probably start the contention that the people had thereby deliberately abandoned the general policy which it prescribes. It is the office of a constitution to locate the powers of government and define the modes of their exercise. It would be impossible for their' framers to anticipate and forbid every form or device which ingenuity can invent to defeat their provisions.
It is by its substance, rather than its form, that the validity of legislation must be determined. This act does in substance, though not in form, create a class of villages. We assume that the members of the general assembly are well in *7 formed as to the contents of the census tables, and that it was not by accident, but of deliberate purpose, that three other villages were classified with West Carrollton for the purpose of this grant of corporate power. But the comprehension of more than one village within the class does not make the act general. It is not general, because it does not apply to all villages of the state, which, upon every consideration which could legitimately prompt the general assembly to grant corporate power, or to classify municipalities, would require the same laws. If those who are charged with the administration of justice, may share in the common knowledge of mankind, the legislature did not suppose that these villages required different legislation from those having a population of six fewer or six more than three hundred and sixty ; and this classification is a subterfuge. Being arbitrary and unreasonable, it is void.
Nor is the act redeemed by the provision that the power which it confers may be exercised by all the villages of the state which at any future federal census may have the designated population. The validity of an act is to be determined by its practical operation in view of the circumstances existing at the time of its passage, and the act is special which, in fact, has but a special application. The wisdom of an act may be vindicated by history; but that cannot be said of its constitutional validity. Moreover, classifications are not necessarily, nor in fact, permarient, and classes do not become enlarged by the growth of municipalities. The prospective provision of this act is part of a device to conceal the purpose to evade the constitution.
In any view that may be taken of the act, it must fall when subjected to the tests prescribed in the opinions quoted. For, still assuming that the populations of the villages described were all known, the representation of but four counties in the entire state were interested, because other constituencies were not affected by the act. It did not challenge “ the vigilance and attention of its whole representation.”
*8 It is true that courts of high authority, when considering and upholding legislative enactments of doubtful constitutionality, have said that consideration is due to the fact that members of the law-making bodies, charged by the same obligations as are courts to uphold the constitution, have considered the constitutional objections, and have found that they are not well taken. Pride of ancestry is nurtured and gratified by the belief that when this observation was originally made it was founded on fact. But it would not aid a search for truth to extend that consideration to acts of thé general assembly when unanswerable objections to the constitutionality of pending bills do not control majorities; when acts are passed in whose constitutionality no one believes, and when acts of questionable validity are passed in such large numbers that a serious consideration of their constitutionality would be impossible. Cases of this character do not admit of compromise nor concession. The provisions of the constitution and of legislative enactments that are repugnant to them cannot be enforced together.
Nor do we think that we should be deterred from rendering such judgment as will uphold the constitutional provisions referred to, because under acts, obnoxious to the same objection, many municipalities are governed, and many rights have become vested. It may be that substantial reasons can be found for enforcing rights that have become vested under void enactments in which there has been general acquiescence. Whether so or not, no acquiescence by others in the execution of similar enactments can waive the right of this plaintiff to insist that his property shall not be taxed unlawfully.
Counsel for the defendants do not present any view of these constitutional provisions, and of this statute, which would, in their opinion, make them harmonious. The serious contention is that authoritative decisions of the Supreme Court upon acts classifying municipalities, require us to adjudge that the act is valid, though it be void. It is true that under the pretense of classification, all the large cities of the state have *9 been isolated; that under cover of such “classification” numerous special acts have been passed, each conferring corporate powers upon a single municipality, and that, by repeated decision, the Supreme Court has held such legislation to be valid. By this time, surely, we are inured to following these decisions as to the acts of classification which they uphold. But there are substantial reasons why we should not attempt to apply the principles of those decisions to this act. Our inability to comprehend those principles is so manifest to ourselves that to invoke them as authority for upholding an act that is in direct conflict with the plain provisions of the constitution would be mock deference. The decisions referred to do not stand well in the estimation of the Supreme Court itself. It is concerning the classification upheld by them that it is said in The State ex rel. v. Smith, 48 Ohio St. 211: “ It must be conceded that the method of classifying cities for the purpose of legislation has been carried to the very verge of constitutional authority. Many conscientious minds believe that it has been exceeded.” Much more vigorous language would be required to express the opinion of that classification that is generally held by the bench and bar of the state, and by many other intelligent citizens who seek better municipal government. It is well, if not widely, known that most of the eminent judges who participated in the decisions upholding such classification lived to regret the decisions and deplore the results which followed them.
We regret that we cannot inform counsel how an act which confers corporate powers upon a single municipality can be genera], although an act which confers such powers upon four municipalities is special. We perceive no ground of distinction except that such large differences in population as really require the exercise of different municipal powers have been thought to be a reasonable basis of classification; but we are not aware of any decision upholding a classification resting upon such narrow ground as a difference of ten in population. The clear conviction that the act under consideration is void *10 will, we hope, sustain us under the embarrassment which comes from the realization that this distinction is founded on arithmetical computation rather than on principles of constitutional law.
McMahon & McMahon, for plaintiff.
Nevin & Kumler, for defendants.
An injunction will be granted as prayed for.